48 CCPA

**GUARDIAN LIGHT COMPANY,**
Appellant,

v.

**GUARDIAN ELECTRIC MANUFAC-
TURING CO.,** Appellee.

Patent Appeal No. 6677.

United States Court of Customs
and Patent Appeals.
July 14, 1961.

Smith, J., dissented.

Francis C. Browne, Mead, Browne, Schuyler & Beveridge, Washington, D. C., Geo. H. Wallace, James B. Kinzer and Wallace, Kinzer & Dorn, Chicago, Ill., for appellant.

A. W. Molinare, Chicago, Ill., and Spencer B. Michael, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

WORLEY, Chief Judge.

Appellant asks us to reverse the Trademark Trial and Appeal Board which sustained an opposition by registrant-appellee, to appellant's application for registration of "GUARDIAN" for

> "Outdoor Type Electric Lighting Fixtures Especially Useful for Illuminating Service Areas of Automobile Service Stations, Lamp Holders

> for Spot and Flood Lamps, Units, and Poles for Supporting Lighting Fixtures."

The opposition is based on opposer's prior use and registration [1] of "GUARDIAN" for

> "Electromagnets, Relays, Solenoids, and Switches, which are generally referred to in the trade as Unitary Electrical Components, adapted for Various uses in industry."

The sole question here, as below, is whether concurrent use of the identical mark "GUARDIAN" on the goods enumerated in the registration and application is likely to result in confusion of purchasers within the meaning of Section 2(d) of the Lanham Act, 15 U.S.C. A. § 1052(d). That act allows registration of a mark otherwise qualified unless it "Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers * * *." That is the test.

The record, consisting of nearly five hundred pages, contains the testimony of two witnesses for appellant, three for appellee, together with their cross-examination, eighty exhibits, and one hundred and two third-party registrations of the trademark "GUARDIAN" used alone and in conjunction with other words covering products ranging from asbestos to valves.

We take the liberty of quoting the following excerpts from the board's decision:

> "Opposer's products comprise electrical components such as switches, solenoids and relays which are primarily sold to manufacturers of electrical parts or machines, but which

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provi-sions of Section 294(d), Title 28 United States Code.

1. Reg. No. 570,073 issued February 10, 1953.

are also sold to electronic parts jobbers and distributors. During the period 1948 through 1957, opposer expended approximately $846,000 in advertising electrical components under the mark 'GUARDIAN' utilizing trade journals, brochures, catalogues, and the like.

"Applicant's products comprise lighting equipment for illuminating the pump islands and adjacent areas of gasoline service stations and the exteriors of service station buildings. These products are primarily sold to the oil and petroleum industry and the gasoline service station trade but sales are also made to electrical wholesalers and electrical contractors. Applicant advertises these products in trade journals directed to the gasoline marketing trade. Applicant also makes sign lighting units for outdoor signs which it sells directly to outdoor advertising companies.

"There is no doubt but that the products are specifically different. While the ultimate users of the products are not the same, the record indicates that these products are or can be sold through wholesalers of electrical goods. The question presented is whether this class of purchasers is likely to assume that electrical components such as relays, solenoids, and switches, on the one hand, and, outdoor type lighting equipment, on the other, sold under the same mark originate with the same producer. This question is answered by the record."

After citing numerous instances of actual confusion resulting from concurrent use of the mark on the respective goods, the board concluded that

"There is no doubt that confusion or mistake as to source is likely to result, since it has, in fact, resulted."

This is not a situation where the same mark is sought for use on wholly unrelated goods, such as, for example, ladies' hosiery and farm machinery. On the contrary, applicant seeks to appropriate the identical mark for products which have too much in common with those products being marketed under the same name by the registrant. We agree with the board that under such circumstances concurrent use is not only likely to result in purchaser confusion but has actually so resulted. We are not impressed with appellant's attempts to minimize those instances.

Full consideration has been accorded appellant's arguments and citations but they fail to convince us that the board erred in sustaining the opposition.

Affirmed.

RICH, Judge (concurring).

My only reason for sustaining the opposition is that the marks are identical and the goods of both applicant and registrant are electrical goods. I feel the public in sufficient numbers to create a "likelihood of confusion" would believe the goods have a common origin. This is a purely subjective opinion not in the least influenced by the evidence in the record relating to actual confusion.

SMITH, Judge (dissenting).

The record here contains some 102 third party registrations of marks showing the word "Guardian" used either alone or in combination with other marks and symbols. In such a situation the word "Guardian," as registered to opposer establishes it as a mark only for the *particular* goods recited in the registration and the issue of likelihood of confusion or mistake or deception of purchasers must be determined primarily by a comparison of the goods of applicant and those recited in opposer's registration. Where, as the Trademark Trial and Appeal Board has here found, the products are "specifically different" and the ultimate users are not the same, I would not sustain the opposition for I am unable to find a likelihood of confusion or mistake or deception of purchas-

ers arising from the common use of a name of such limited distinctiveness as "Guardian."

Opposer's record is made up of several instances of misdirected correspondence, alleged to be actual confusion and evidence of likelihood of confusion or mistake or deception of purchasers. The board and the majority opinion seem to have relied upon this evidence as establishing the likelihood of confusion or mistake or deception of purchasers under Section 2(d) of the Lanham Act (15 U. S.C.A. § 1052).

In my opinion, the board and the majority have erred in sustaining the opposition. The two principal reasons underlying my opinion are (1) the record does not support opposer's averment of damage "by the registration of [the] mark" as required by Section 13 of the Lanham Act, 15 U.S.C.A. § 1063, and (2) the alleged actual confusion or mistake or deception of purchasers is not shown to have arisen through application of the mark "Guardian" to the goods of the application but only through use of Guardian in the corporate names of the parties.

The present record, it seems to me, fails to establish the likelihood of confusion, mistake or deception of purchasers. At best it establishes nothing more than that the similarity of the corporate names of the parties (an issue not before us) has resulted in some instances of actual confusion. In my opinion this is not the type of confusion, mistake or deception contemplated by Section 2(d) of the Lanham Act. In addition, the evidence of confusion, mistake or deception of purchasers which the record reveals does not show that it resulted from applicant's *use of the mark* "Guardian" *on its goods.* The evidence of record simply

does not establish that opposer has suffered or is likely to suffer any cognizable damage as a result of applicant's use of its mark "Guardian" on outdoor lighting fixtures, supporting poles and the like. The evidence in fact shows, it seems to me, that there is no likelihood that opposer will be damaged by *registration* of applicant's mark *for its limited line of goods.*

The Trademark Trial and Appeal Board, after enumerating in its decision some of the companies by whom mail was misaddressed or misdirected, found:

> "In addition, orders for or concerning "GUARDIAN" relays and solenoids were misdirected to applicant. These pieces of misdirected mail consist of some thirty-six orders and letters which are dated from December 16, 1953 to January 13, 1959."

This statement is not supported by the record. In all the misdirected mail there appears to be but a single instance where a solenoid, relay, switch or like product of the opposer is referred to by the "Guardian" designation (Opposer's Exhibit 46). Even this single instance may be of debatable significance, referring as it does to a "Guardian" serial number, which, as used in the request for quotation refers as well to the company name as it does to a trademark for goods.[1]

It seems to me that Opposer's Exhibits 31 to 67 do not establish the likelihood of confusion, mistake or deception of the type set forth in Section 2(d) of the Lanham Act. For example, Exhibit 53 (dated August 15, 1958) contains a request for a price quotation on a "Burgess radar spot flasher" and is directed to opposer. No reason has been given as to why opposer forwarded this request in-

---

1. Exhibit 46 reads as follows:
   "Guardian Lite Co.
   "301 Lake Street
   "Oak Park, Illinois
   "Gentlemen:
   "Please quote me price ...........
   2 ea MICRO SWITCH, similar
   to Guardian Serial 70–150,
   SP5 T ......................."

**546**

volving a "Burgess" item to applicant, since applicant does not make or sell such an item (R. 156, XQ. 68). Such an exhibit can as well establish confusion arising solely out of similarity of corporate names as it does confusion arising out of use of the word "Guardian" as a trademark. The burden of proof is on the opposer to establish that *applicant's use of the mark* on *its* goods is likely to cause confusion, mistake or deception of purchasers. Here the opposer has not sustained this burden.

The misdirected orders and requests from Graybar Electric, some ten in number (Exhibits 31, 32, 34–38, 56, 62 and 64), it seems to me, do not show the likelihood of confusion, mistake or deception of purchasers of the type contemplated by Section 2(d) of the Lanham Act. Because of the geographical spread of the numerous branches of Graybar among these ten exhibits it seems to me just as reasonable to conclude that someone in over-all authority at Graybar may have committed a careless error which affected the various branches, as it does to conclude that applicant's use of the name "Guardian" as a trademark on its goods is the source of the confusion. Thus, after the Memphis Graybar branch erred in addressing the first order in 1953 (Exhibit 31), and this error was called to its attention by applicant, when it acknowledged this order (see "Note," bottom of invoice Exhibit 31) Memphis Graybar repeated the error on two subsequent occasions in 1954 (Exhibits 37 and 38).

A further example of what seems to me to be clerical carelessness is shown in opposer's Exhibit 64 wherein Graybar ordered a switch from "Guardian Elec" while using the Oak Park, Illinois address of Guardian Light Company. A similar instance of clerical carelessness is represented by one of the five occurrences originating among different branches of General Electric Supply Company (Exhibits 33, 39, 41, 45 and 46). One of these, Exhibit 45, is an order for a lamp holder naming "Guardian Ltg. Mfg. Co." as addressee but bearing the Chicago, Illinois street address of Guardian Electric, the opposer.

Errors such as the above involving misaddressed or misdirected mail do not, in my opinion, prove either actual confusion, mistake or deception of purchasers or the likelihood thereof *arising from applicant's use of the mark on its goods* which I believe is the only type of confusion or mistake or deception of purchasers we are entitled to consider under Section 2(d) of the Lanham Act. This section specifically limits the issue in the present opposition proceeding to a determination of whether applicant's mark "when applied to the goods of the applicant" will be likely "to cause confusion or mistake or to deceive purchasers." This is a very narrow issue when compared to the more general issue of "confusion" to which opposer has directed its proofs. While there are many ways in which confusion, mistake or deception of purchasers may occur, unless in the present case we are able to find from the record before us that the alleged likelihood of confusion, mistake or deception of purchasers is attributable *to applicant's use of its mark on its goods*, we have, as I see it, no alternative but to dismiss the opposition. The sole question here is whether applicant's use of the mark "Guardian" on the goods named in its application will be likely to cause confusion, mistake or deception of purchasers. While the board and the majority appear to be willing to accept the evidence of actual confusion of opposer's and applicant's corporate names as determinative on this issue, I am not. Such evidence does not seem to me to establish that such confusion arose out of applicant's *use of the mark "Guardian" on its goods*.

For these reasons I think the Trademark Trial and Appeal Board and the majority are in error in accepting the proofs of confusion in the record here as indicating that there is a likelihood of confusion, mistake or deception of purchasers due to applicant's use of its trademark on its goods. I would therefore reverse the board.